## AARONSON v. UNITED STATES.
### No. 5848.

United States Court of Appeals
Fourth Circuit.

Argued April 4, 1949.

Decided June 8, 1949.

Simon E. Sobeloff, Baltimore, Md. (H. Mortimer Kremer, Baltimore, Md., and Donald N. Rothman, Baltimore, Md., on brief), for appellant.

James S. Morrow, Jr., Assistant U. S. Attorney, Baltimore, Md. (Bernard J. Flynn, U.S. Attorney, Baltimore, Md., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This appeal grows out of a conviction on two counts of an indictment, one of which charged that the appellant Aaronson aided and abetted his co-defendants Rosen and Sakelos in the larceny of 6,000 sheets and 840 mattress covers of the value of $8,000, property of the United States, from the United States Maritime Commission Ware-

house at Curtis Bay, Maryland, in violation of 18 U.S.C.A. §§ 82, 550;[1] and the other count charged that Aaronson received the same property, knowing it to have been stolen, in violation of 18 U.S.C.A. § 101.[2] Aaronson was sentenced on each count to pay a fine of $1250 and to serve three years' imprisonment, the terms to run consecutively. On this appeal he contends (1) that his conviction for receiving is inconsistent with his conviction for larceny of the same property because Section 101 makes it a crime knowingly to receive government property which has been stolen "by any other person"; and (2) that the judgment of two consecutive terms of imprisonment, plus the fine on each of the two counts of the indictment, subjects him to double punishment for the same offense.

In the latter part of May, 1948, Aaronson, who was in the war surplus business, was approached by Rosen and Sakelos and requested to assist them in stealing the goods from the government warehouse. It was agreed that Rosen and Sakelos should bribe the government watchman at the warehouse to permit them to enter so that they could remove the merchandise, and that Aaronson would pay them $2500 for the loot. He advanced $50 in furtherance of the plan and agreed to arrange for the storage and disposal of the goods after the larceny. On the day of the theft, Rosen and Sakelos telephoned Aaronson before going to the warehouse and were instructed that after they had removed the goods, they should meet Aaronson at the corner of the Fallsway and Centre Street in Baltimore, where he would await them and take them to a warehouse to unload the goods. The transaction was carried out as planned. Rosen and Sakelos removed the goods from the warehouse and drove to the rendezvous where Aaronson was waiting. They then proceeded to the warehouse secured by Aaronson—Rosen and Sakelos in the loaded truck and Aaronson in his own automobile. The merchandise was unloaded and placed in the warehouse. Aaronson gave them an additional $250, promising the rest of the money when the goods were sold. Subsequently he made several unsuccessful attempts to sell the goods and then learning that government agents were working on the case, withdrew from the scheme. The other defendants arranged for the disposition of the goods in New York. Aaronson was reimbursed for his expenditures but received no profit from the transaction.

The defense is based upon the general proposition that a person may not be convicted both of actually stealing goods and of receiving the same goods, knowing them to be stolen, either at common law or under the federal statutes relating to the larceny of government property. 18 U.S.C.A. §§ 82, 101. It is well established that the person who actually does the stealing cannot also be guilty of receiving the stolen property for the reason that he cannot "receive" it from himself. 2 Wharton Criminal Law, 12th Ed., § 1234; 2 Bishop Criminal Law, 9th Ed., § 1141; State v. Webber, 112 Mont., 284, 116 P.2d 679;

---

[1] 18 U.S.C.A. § 82 (now § 641): "Whoever shall take and carry away or take for his use, or for the use of another, with intent to steal or purloin, * * * any property of the United States, or any branch or department thereof, * * * shall be punished as follows: If the value of such property exceeds the sum of $50, by a fine of not more than $10,000 or imprisonment for not more than ten years, or both; * * *."

18 U.S.C.A. § 550 (now § 2): "Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal."

[2] 18 U.S.C.A. § 101 (now § 641): "Whoever shall receive, conceal or aid in concealing, or shall have or retain in his possession with intent to convert to his own use or gain, any money, property, record, voucher, or valuable thing whatever, of the moneys, goods, chattels, records, or property of the United States, which has theretofore been embezzled, stolen, or purloined by any other person, knowing the same to have been so embezzled, stolen, or purloined, shall be fined not more than $5,000, or imprisoned not more than five years, or both; and such person may be tried either before or after the conviction of the principal offender.

It should be noted that the critical words "by any other person" were deleted in the new Criminal Code, § 641, which became effective September 1, 1948.

Note 136 A.L.R. 1087, 1088; 45 Am.Jur., Receiving Stolen Property, § 10. And the same principle applies to the crime with which the defendant is charged since 18 U.S.C.A. § 101 punishes whoever receives property of the United States theretofore stolen "by any other person", knowing the same to have been so stolen. Cartwright v. United States, 5 Cir., 146 F.2d 133, apparently overruling without citation Pringle v. United States, 5 Cir., 128 F.2d 736; see Williams v. United States, 4 Cir., 151 F.2d 736.

The common law rule, however, in most jurisdictions and the rule under Section 101 are subject to the qualification that one who does not participate in the actual taking of the goods may be guilty of receiving them although he may have been an accessory before the fact to the theft, and to that extent have participated in the crime. Weisberg v. United States, 49 App.D.C. 28; 258 F. 284; 2 Wharton Criminal Law, 12th Ed., § 1234; Note 136 A.L.R. 1087, 1095; 45 Am.Jur., Receiving Stolen Property, § 10.

The defendant attempts to meet this qualification of the rule by referring to the indictment which charged in the first count that his co-defendants did take and carry away goods of the United States with intent to steal them, and that he "did aid and abet" them in the unlawful taking and carrying away. That language is taken from 18 U.S.C.A. § 550 which provides that whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces or procures its commission, is a principal. So it is said that the defendant was charged and convicted as a principal in the larceny since the statute abolished the distinction between principals and accessories, making all participants principals in the commission of the crime. Moreover, it is pointed out that the indictment did not charge that the defendant counselled, commanded, induced or procured the commission of the crime so as to indicate that he was merely accessory thereto, but alleged that he was an aider and abettor, that is to say, giving these words their technical meaning, that he was present at the actual taking of the goods and was therefore such a participant in the crime that he could not be held guilty of receiving the stolen property.

This argument, we think, cannot be sustained. It is true that in the form in which the statute was cast at the time when the transaction took place a person could not be guilty of receiving the stolen property under § 101 unless the property had been stolen by another person. But these words do not mean that the receiver may not have had any association with the other person or have rendered him any assistance or encouragement before the commission of the offense. Even under the application of the rule of common law it is generally held, as we have seen, that one who induces or procures the commission of a crime, who is in other words an accessory in the technical sense, might also be a receiver of the stolen goods; and the transactions between the appellant and his codefendants whereby the larceny was planned clearly show that he was an accessory before the fact in this sense.[3] The same result is reached even in jurisdictions where the distinctions between principals and accessories have been abolished by statute, Note 136 A.L.R. 1087, 1100, because the result does not turn on these distinctions but flows from the common law rule that only where one has had a part in the actual caption of stolen goods is it impossible for him to "receive" them.

It would be clearly contrary to the intent of Congress if we should interpret Section 550 so as to preserve the technical distinctions which formerly existed between degrees of principals and between principals and accessories in the commission of crime; and the argument of the appellant in this case could not be sustained unless that course were adopted by the court. It is true that in some of the decisions relating to the statute it is suggested that it is still

---

[3] It has also been held, although there is conflict in authority upon the point, that one who is present and aids and abets in the commission of a theft but takes no part in the actual caption of the goods, may be convicted of receiving. Note 136, A.L.R. 1087, 1101; Smith v. State, 59 Ohio St. 350, 52 N.E. 826; Metcalf v. State, 98 Fla. 457, 124 So. 427; 2 Bishop on Criminal Law, § 1140.

necessary to look to the common law to ascertain the meaning of the terms employed. See United States v. Pritchard, D.C.W.D. S.C., 55 F.Supp. 201; Morei v. United States, 6 Cir., 127 F.2d 827. But these statements do not compel the view that it was the intention of Congress to preserve the ancient technicalities, and the general course of authority has been to the contrary. For example, it has been repeatedly decided that the words "aid and abet" as used in Section 550, should not be given the strict technical meaning of the common law that the defendant must have been present at the time of the commission of the crime. Collins v. United States, 8 Cir., 20 F.2d 574; Borgia v. United States, 9 Cir., 78 F.2d 550, certiorari denied 296 U.S. 615, 56 S.Ct. 135, 80 L.Ed. 436; Collins v. United States, 5 Cir., 65 F.2d 545; Parisi v. United States, 2 Cir., 279 F. 253; Vane v. United States, 9 Cir., 254 F. 32; Smith v. United States, 5 Cir., 24 F.2d 907. See also Backun v. United States, 4 Cir., 112 F.2d 635; Ruthenberg v. United States, 245 U.S. 480, 38 S.Ct. 168, 62 L.Ed 414.

■ These decisions clearly show that the words of the statute are not to be construed technically but are to be interpreted in their colloquial sense. In our view the actions of the defendant prior to the actual theft wherein he cooperated with his co-defendants were properly described in the indictment as aiding and abetting, although they might also fall within the description of counseling, inducing or procuring the commission of the crime. His conviction under the larceny count was therefore justified, and since he did not take part in the actual taking, his subsequent acceptance of the goods with guilty knowledge justified his conviction under the count for receiving stolen goods. We need not go so far as to say that one who is actually present at the theft and aids and abets the commission of the crime, without participating in the actual taking and asportation of the goods, could be guilty of receiving under the statute as it was formerly expressed. It is sufficient to say in the present case that although the appellant actively aided, abetted and procured the commission of the crime before it occurred, he did not participate in the actual taking of the goods and did not receive them until after they had been stolen.

This conclusion is not shaken by the subsequent actions of the appellant when he met the thieves on the street corner after the goods had been stolen and accompanied them to the warehouse and assisted in unloading the truck. It has been held that conduct of this kind constitutes the crime of larceny. Dunlavey v. Commonwealth, 184 Va. 521, 35 S.E.2d 763; Reg. v. Campbell, 2 Canadian Criminal Cases, 357; 2 Wharton, Criminal Law, 12th Ed., § 1169; Note 29 A.L.R. 1031. Nevertheless the theft of the goods had already been completed by the prior action of the codefendants, and while the appellant's subsequent participation in the transportation of the goods may amount to larceny, it may also be considered as his first active step in the receipt of property stolen by other persons. To hold otherwise would be to indulge in technicalities not contemplated by the statutes.

■ The same reasons dispose of appellant's point that in violation of the Fifth Amendment to the Federal Constitution he has been subjected to double punishment for the same crime. A single transaction may be an offense against two statutes if each statute requires proof of a fact which the other does not. Gavieres v. United States, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489; Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306. The actions of the appellant in cooperation with the co-defendants prior to the removal of the goods from the warehouse and his subsequent acceptance of the goods were separate and distinct, and in their performance separate crimes were committed for each of which a separate punishment was provided by the statutes. See Carroll v. Sanford, 5 Cir., 167 F.2d 878; cf. In re Nielsen, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118; Morgan v. United States, 4 Cir., 294 F. 82.

Affirmed.