Mike **MILANOVICH** and Virginia Milanovich, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 7825.

United States Court of Appeals Fourth Circuit.

Argued Nov. 2, 1959.

Decided March 8, 1960.

Louis Koutoulakos, Arlington, Va. (J. Hubbard Davis, Norfolk, Va., and Paul G. Varoutsos, Arlington, Va., on brief), for appellants.

Henry St. J. FitzGerald, Asst. U. S. Atty., Alexandria, Va. (Joseph S. Bambacus, U. S. Atty., Richmond, Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

PER CURIAM.

Mike Milanovich was convicted in the District Court for the Eastern District of Virginia on a count charging him with larceny of $14,788.78 on June 2, 1958, from the United States Naval Amphibious Base at Little Creek, Virginia. His wife, Virginia Milanovich, was convicted on the same count of larceny, and also on a count charging her with receiving stolen goods (i. e., the same $14,788.78) on June 2, 1958.[1] The convictions were

---

[1] Both were also charged with larceny and receiving stolen goods from a Naval Air Station at Norfolk on May 17, 1958, but the jury acquitted, and we are not here concerned with these counts.

under 18 U.S.C.A. § 641, the first paragraph of which makes it an offense to steal property belonging to the United States, while the second paragraph makes it an offense to receive such stolen property. Both husband and wife have appealed.

The evidence against the Milanovichs consisted chiefly of the testimony of three accomplices. It was revealed that they and their three accomplices had previously planned the robbery, that all five drove at night in Mike Milanovich's automobile to the Amphibious Base, and that the three accomplices actually broke into the commissary store on the base where they opened the safe, while the Milanovichs waited in their automobile outside the store. Because the theft took longer than had been anticipated, the Milanovichs left the base and did not wait, as had been planned, for their confederates to finish. After leaving the commissary store, the three hid the stolen money in a nearby woods on the base, and then proceeded to a prearranged meeting place where Virginia Milanovich picked them up. It is not clear from the evidence exactly when, or by whom, the money was actually retrieved, but there was testimony that more than two weeks after the theft, Virginia Milanovich assisted in the counting of it. It was also disclosed that on June 19, 1958, a suitcase was found at the Milanovich home containing $500.00, allegedly part of the loot.

On the larceny count, Mike Milanovich was sentenced to five years imprisonment, while Virginia was sentenced to ten years. The court imposed on Virginia an additional sentence of five years for receiving the stolen goods, to run concurrently with her ten year sentence for the larceny.

Six assignments of error are discussed in the appellants' brief, but, in our view, only the first has any merit.

### 1. Convictions for Larceny and Receiving the Same Property

The contention is made that, in the light of her conviction upon the larceny count, Virginia Milanovich could not properly be convicted of receiving the stolen money. This claim of error is applicable only to Virginia Milanovich as she alone was convicted of both offenses.

■ Both at common law and under the federal statutes, the settled rule is that a person cannot be convicted for stealing goods and receiving them also. People v. Barnhill, 333 Ill. 150, 164 N.E. 154; People v. Daghita, 301 N.Y. 223, 93 N.E.2d 649; State v. Hamilton, 172 S.C. 453, 174 S.E. 396; Annotation 136 A.L.R. 1087; 2 Wharton's Criminal Law and Procedure (1957 ed.) § 576; 45 Am. Jur., Receiving Stolen Property, § 2. However, there is a recognized exception that an accessory before the fact, not participating in the actual theft, who in federal law and in many states is regarded as a principal, may, nevertheless, be convicted of both larceny and receiving the stolen goods. Both the rule and exception to it have been applied in appropriate cases to federal statutory crimes, Aaronson v. United States, 4 Cir., 175 F.2d 41.

■ In Aaronson, where convictions for both offenses were affirmed, the defendant had agreed with two other persons that if they would steal for him certain goods from a Government warehouse, he would pay them $2,500.00. On the day of the theft, the defendant did not accompany the two thieves to the warehouse, but he met them after the theft at a considerable distance from the Government warehouse. It has been argued to us that Virginia Milanovich was much more an actual participant in the theft than was the defendant in Aaronson, and thus the general rule prohibiting convictions for both larceny and receiving the same goods applies, rather than the limiting exception.[2] We do not

2. The authorities appear to be in conflict where one is present at the scene of the crime, aiding in the commission of the larceny, but not taking part in the actual caption of the property; some cases hold that such person may be convicted of both larceny and receiving, while others hold that this may not be done. See Annotation 136 A.L.R. 1087, pp. 1101–1103.

reach this question, as we think that the Supreme Court, in Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed. 2d 407, decided after the trial of this case, has indicated the general view that in the absence of a contrary indication by Congress, a defendant charged with offenses under statutes of this character may not be convicted and punished for stealing and also for receiving the same goods.

In Heflin, which was a prosecution under the bank robbery statute [18 U.S. C.A. § 2113] it was held that Congress did not intend to subject to double punishment a person who robbed a bank and received the fruits of the robbery. The Court said, 358 U.S. at page 419, 79 S.Ct. at page 454:

> " * * * it seems clear that subsection (c) was not designed to increase the punishment for him who robs a bank but only to provide punishment for those who receive the loot from the robber. We find no purpose of Congress to pyramid penalties for lesser offenses following the robbery. * * * "

The Court did not discuss the common law distinction between an accessory before the fact and a person actually partaking in the theft, but the language of the opinion precludes such a distinction. The decision was based, not upon any constitutional ground, but upon the view that Congress, by making it an offense to receive the stolen money, intended to reach an entirely distinct group of persons, and not to proliferate the punishment of those who commit robbery in violation of the statute. In saying " * * * we think Congress was trying to reach a new group of wrongdoers, not to multiply the offense of the bank robbers themselves," the Supreme Court would seem to refute any suggestion of a congressional purpose to draw a technical line whereby, while the thief may not be prosecuted as a receiver, his accessory may be answerable for both offenses.

The Government, however, argues that the Heflin decision is not applicable here because it involved the bank robbery statute [18 U.S.C.A. § 2113] with its particular legislative history, while the case before us involves another statute, that dealing with the theft of Government property [18 U.S.C.A. § 641]. We perceive no differences between the two statutes or their legislative histories justifying divergent interpretations in respect to the issue before us. In each statute, the first part makes the theft itself a crime, while a subsequently added paragraph deals with receivers of the stolen property. In Heflin, the Supreme Court, after observing that the legislative history of § 2113(c) was meager, pointed out that subsection (c), dealing with receiving, came into the law later than the subsection pertaining to the actual robbing of a bank. The same, however, is true of § 641, under which Virginia Milanovich was prosecuted. The first paragraph, making it an offense to steal Government property, has its origin in the act of March 2, 1863, ch. 67, 12 Stat. 696, 698; the second paragraph, pertaining to receivers, is derived from the act of March 3, 1875, ch. 144, § 2, 18 Stat. 479. The Government has failed to point out anything in the legislative history of the two sections requiring different constructions. Moreover, we find no reason to think that it was the congressional purpose to punish for stealing Government property and also for receiving the same, although it is now settled that one may not be convicted for robbing a bank and also for receiving the fruits of the crime.

■ Virginia Milanovich received concurrent sentences, ten years upon the conviction for larceny and five years upon the conviction for receiving the stolen money. Though we think the sentence for receiving should be stricken, we appropriately affirm the judgment of commitment which is fully supported by the conviction on the larceny count.

The application of the rule, that one who procures, aids or supports a larceny to such an extent that he is properly convicted as a principal may not also be punished for receiving the loot creates

no inconsistency in the verdict. It does not obscure the jury's finding. Though we now hold, following Heflin, that the statute which makes receipt of the money a Federal crime was intended to reach a class of persons other than those guilty of the larceny, it is only because this defendant stands properly convicted of the larceny that the rule comes into play. Under these circumstances, avoidance of proliferation of the offense of larceny requires the vacation of the sentence for receiving the money; it does not infect the conviction on the larceny count.

Clearly, the jury found that Virginia Milanovich aided and participated in the larceny to such an extent as to warrant her conviction of larceny. The verdict of guilty on the larceny count is abundantly supported by the evidence.

It is suggested that, if properly instructed, the jury might have found her guilty of receiving rather than of larceny. If we accept the facts as found by the jury, as we must, the jury had no such alternative. Only if the jury found that she was innocent of the larceny and that possession of the money was not hers, actually or constructively, from the time of taking, could it have properly found her guilty on the receiving count. Since, plainly, the jury did find that she was a participant in the larceny, its only alternative, under the rule of law we now declare, was to convict her of larceny and acquit her on the receiving count.

In light of the Supreme Court's decision in Heflin, we think the appropriate instruction to the jury should have been to acquit on the receiving count if it should find her guilty on the larceny count. Since the jury's findings are plain, this conditional direction of an acquittal on the receiving count can be done as well after the verdict as before. This is what the Supreme Court did in Heflin.

The case is within the rule of affirmance of the judgment of commitment if supported by a proper conviction upon one count notwithstanding the fact that a concurrent sentence was improperly imposed upon another count. Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407; Hirabayshi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774; Abrams v. United States, 250 U.S. 616, 40 S.Ct. 17, 63 L.Ed. 1173; Claassen v. United States, 142 U.S. 140, 12 S.Ct. 169, 35 L.Ed. 966; Harms v. United States, 4 Cir., 272 F.2d 478.

The sentence on the receiving count will be vacated, but that does not require a reversal of the judgment.

2. Other Assignments of Error

Five other assignments of error are made on behalf of both appellants, but, in our view, none of them warrants extensive discussion. At the beginning of the trial, the court granted the defendants' motion to exclude the witnesses. However, the trial judge refused the defendants' further request that the witnesses be instructed not to discuss their testimony. The exclusion of witnesses from the courtroom is discretionary, and it has been further held, in an opinion of Judge Learned Hand, United States v. Chiarella, 2 Cir., 184 F. 2d 903, 907, that: "A fortiori an instruction to them not to discuss the evidence while out of the courtroom is also discretionary." It does not appear here that the witnesses did communicate concerning their testimony, and no prejudice to the defendants and no abuse of discretion is shown. We wish to indicate our view, however, that ordinarily, when a judge exercises his discretion to exclude witnesses from the courtroom, it would seem proper for him to take the further step of making the exclusion effective to accomplish the desired result of preventing the witnesses from comparing the testimony they are about to give. If witnesses are excluded but not cautioned against communicating during the trial, the benefit of the exclusion may be largely destroyed.

The next asserted error is that the court improperly limited cross-examination of one of the Government's witnesses. The limits imposed were not improper because the point sought to be developed had already been inquired into

at great length. The defense attorney persisted in cross-examining about the witness' possession of a key to a certain apartment. The court made it clear that the cross-examiner was free to interrogate fully as to the relationship between the witness and the girl he had been visiting, and the restriction was merely against an indirect attack on the reputation of a person not then on the stand.

 It is claimed that the court erred in its refusal to instruct the jury that where the Government relies on circumstantial evidence, such evidence must exclude every reasonable hypothesis except guilt. This instruction was requested in amplification of the judge's charge. While there are precedents in lower courts for such an instruction, the Supreme Court has deprecated it. Circumstantial evidence has been said by the Court to be intrinsically like direct evidence; both kinds involve danger of error and always the jury must weigh the evidence and the inferences to be drawn. Where the jury has been adequately instructed on the required standards of proof and the law of reasonable doubt, an additional instruction of the type requested on circumstantial evidence is unnecessary and has been called "confusing and incorrect," Holland v. United States, 348 U.S. 121, 139, 75 S.Ct. 127, 137, 99 L.Ed. 150.

 The appellants claim to have been prejudiced by the trial judge's rebuking a Government witness. The witness did not, when first asked a question by the prosecutor, answer correctly, and then after the correct answer was elicited, the court merely admonished her to tell the truth. The court's action was entirely proper, and it is difficult to see how it could have been prejudicial to the defendants.

 The last alleged error relates to the trial judge's urging the jury to try to come to an agreement. After the jury had deliberated many hours, the trial judge gave them supplemental instructions on the importance of attempting to reach a verdict. We find in these in-structions no undue pressure on any of the jurors to change their views.

Affirmed.

SOBELOFF, Chief Judge (concurring in part and dissenting in part).

I fully concur in the opinion and judgment of the court that there was no error in the trial of Mike Milanovich and that his conviction should be affirmed. Also I agree with the court in its frank recognition that as to Virginia Milanovich the District Court erred in failing to instruct the jury, as requested, that they could not convict her of both larceny and receiving the goods stolen. However I do not agree that the error can be deemed nonprejudicial and therefore does not require reversal of the judgment as to her.

It is difficult to convince oneself that Virginia Milanovich was not harmed by the admitted error. It is notable that, although her husband, who was convicted of larceny only, was sentenced to a five year term, her sentence for the larceny was ten years. Who can say that if she had been convicted on the larceny count only, the sentence would still have been ten years? Does not the situation strongly suggest that the five year sentence for receiving was made concurrent with the ten year sentence for larceny precisely because the latter already reflected the punishment for the receiving? True, this cannot be demonstrated one way or the other, but the uncertainty must in fairness be resolved in favor of the defendant.

However, even if it could be assumed that Virginia Milanovich's ten year sentence for larceny did not reflect punishment for receiving, I think that she is entitled to a new trial for a more fundamental reason. The majority takes the position that the jury had no alternative but to convict her of larceny and not of receiving. The opinion goes on to say that the appropriate instruction to the jury "should have been to acquit on the receiving count if it found her guilty on the larceny count." I think the proper instruction would have been that the jury could convict of either larceny or

receiving but not both. The judge should not, I submit, indicate to the jury that the larceny and not the receiving is the principal offense.

The result reached by the majority is made possible only by assuming that larceny was the primary offense of which Virginia was guilty, and that the receiving count is of a secondary character coming into play only after the defendant has been acquitted of the larceny. This is contrary to the traditional idea concerning larceny and receiving, that they are separate, distinct, and inconsistent offenses. The two crimes contemplate separate individuals performing entirely different roles. Kirby v. United States, 1899, 174 U.S. 47, 19 S.Ct. 574, 43 L.Ed. 890; Heflin v. United States, 1959, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407; Springer v. State, 1897, 102 Ga. 447, 30 S.E. 971; People v. Barnhill, 1928, 333 Ill. 150, 164 N.E. 154; State v. Tindall, 1948, 213 S.C. 484, 50 S.E.2d 188; 2 Wharton's Criminal Law and Procedure (1957 ed.) section 566; 45 Am.Jur., Receiving Stolen Property, section 2. The general rule, where one cannot be convicted of both stealing and receiving the same goods, is that the prosecution need not elect between counts but such election is for the jury, upon proper instructions. 45 Am.Jur., Receiving Stolen Property, section 13 and section 20. By the affirmance of the conviction, the jury is deprived of its function to make the choice, and instead an appellate court makes it.

If Virginia Milanovich had been a principal in the first degree, i. e., one of the actual thieves, with the evidence overwhelmingly establishing larceny *rather* than receiving, then perhaps the reasoning of the majority would be more plausible, though still questionable. See People v. Daghita, 1950, 301 N.Y. 223, 93 N.E.2d 649. In the present case, however, although only one overall transaction was involved (thereby precluding a conviction for both offenses), there was different evidence establishing each offense. While the receiving by the actual thieves took place immediately upon the theft, we do not know from the record when Virginia received the goods. There was separate and distinct evidence connecting her with receiving. She was seen two weeks later counting the money and a suitcase with the money was found in her home. The evidence implicating her in the larceny, i. e., assisting in the planning of the theft and going to the scene of the crime, consisted entirely of the testimony of admitted thieves, while the testimony showing receiving was corroborated by the additional physical proof, produced by reputable witnesses, of the suitcase of money found in her home. The jury, which admittedly deemed the evidence sufficient to establish both offenses, might well have thought the evidence of receiving was the more credible; if told that they could convict of one charge only, they might well have preferred the receiving count. For the receiving Virginia Milanovich was given only five years. The choice should have been left to the jury, and since they might reasonably have convicted of receiving instead of larceny, and since a lesser sentence was imposed for receiving, this court should not allow the greater sentence to stand. See State v. Sweat, 1952, 221 S.C. 270, 70 S.E.2d 234, where in a factual situation similar to the present one, the Supreme Court of South Carolina held that the conviction of the defendant for receiving rather than larceny was justified. It cannot be assumed that if she had been convicted of the receiving rather than the larceny, the court would then have imposed a ten year sentence instead of five.

It is suggested that the case falls within the rule, exemplified in a long line of federal decisions, that where the judgment is on an indictment containing multiple counts, if any one of them, standing alone, is good and will support the judgment, it will be affirmed. These cases all involved attacks upon one or more counts of an indictment on the ground that the counts did not state facts sufficient to constitute an offense (e. g., Claassen v. United States, 142 U.S. 140, 12 S.Ct. 169, 35 L.Ed. 966), or that the

counts charged an offense which was not constitutionally permissible (e. g., Hirabayshi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774), or that the evidence was insufficient to convict under one or more of the counts (e. g., Abrams v. United States, 250 U.S. 616, 40 S.Ct. 17, 63 L.Ed. 1173). In such cases, if one count was found unobjectionable on the above grounds, and the sentence did not exceed what could lawfully have been imposed upon that count, the conviction was affirmed. The present case poses a quite different problem. The defendant's attack is not directed at one or more independent counts of an indictment but at the jury's failure, because of erroneous instructions, to elect between the two counts.

It bears repeating that the validity or sufficiency of none of the counts is assailed. Rather the complaint is that if the jury had been correctly instructed, the jury might have elected to acquit of larceny and convict of receiving, for which the sentence imposed was only five years. The rule of the above cases is applicable when there is one good count *unaffected* by the others, the bad counts. Here, however, the larceny count is not a "good" count unaffected by the receiving. The two counts are not independent but interrelated. They do affect each other. Either standing alone would be good, but standing together, convictions upon both are inconsistent as a matter of law, when directed against the same person. Thus, because of the erroneous instructions, the larceny count will not support the ten year total sentence.

Nor does Heflin v. United States, 1959, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407, afford any support for the judgment below. In Heflin, the defendant moved to vacate his sentence under 28 U.S.C.A. § 2255, and while the reported opinions do not specify which sentence was being attacked, the inference is clear that the defendant was asking only that the receiving sentence be struck down. Here we have a direct appeal from the conviction, not an attempt to revise a sentence.

Moreover, the result reached by the majority appears to be directly contradictory to the decided cases involving the specific problem here, i. e., the appropriate remedy where there is a concededly erroneous conviction for both stealing and receiving the same goods. Although there appear to be no federal cases exactly in point, the state cases have generally reversed such convictions. In Commonwealth v. Haskins, 1880, 128 Mass. 60, the leading case on this subject, the defendant was indicted for both larceny of a cow and receiving it knowing it to have been stolen. The jury found him guilty of both counts, but after the verdict, the trial judge, upon the state's motion, allowed a *nolle prosequi* to be entered as to the receiving count. This attempt of the prosecutor to retrieve the situation proved unavailing. In reversing the conviction, the Supreme Judicial Court of Massachusetts said:

"The record, therefore, notwithstanding the entry of the *nolle prosequi* shows that the defendants had been convicted by the jury upon both counts; and although, as a legal effect of a conviction upon each count it cannot be said strictly that it is an acquittal upon the other, yet the finding of guilty upon both is inconsistent in law, and is conclusive of a mistrial. It would have been quite proper, before the record and affirmation of the verdict, for the presiding judge to have called the attention of the jury to their misunderstanding of his previous instructions, and to have explained to them the mode by which it became their duty, if they convicted upon either of the counts, to acquit upon the other, and to have required of them to retire for further deliberation. * * * After the affirmation of the verdict, when there was no means of knowing of record upon which count the jury intended to convict, as there was no right in them to convict upon both, to assume that the error is corrected by a *nolle prosequi* of either count by the dis-

trict attorney, is to permit the district attorney to determine, instead of the jury, upon which count the defendants were guilty. But the *nolle prosequi* corrects no error, and has no effect upon the record as it stood prior to its entry. The record showed a verdict so inconsistent with itself, and so uncertain in law, that no judgment could be entered upon it."

This reasoning is cogent and convincing, not only as to the inability of the prosecutor to second guess the jury but also to delimit the prerogative of the appellate court.

In Bargesser v. State, 1928, 95 Fla. 404, 406, 116 So. 12, where the defendant was improperly convicted of larceny of an automobile and also receiving the same, the Supreme Court of Florida stated:

"Although a count charging each of these offenses against the same person and with respect to the same property may properly be included in one information, a verdict which in effect finds the defendant guilty both as a principal in the larceny and as a receiver of the same goods which he himself has stolen is inconsistent, and no judgment can be rendered upon it, *although the evidence might sustain a conviction under either count.*" (Emphasis supplied).

It is no answer in our case, therefore, to say, "the verdict of guilty on the larceny count is abundantly supported by the evidence." Returning to the Florida case, the court concluded at page 408 of 95 Fla., at page 13 of 116 So.:

"Since the defendant, under the evidence in this case, could not in law be guilty of both of these offens-

es, of which one did the jury find him guilty? The proof renders this uncertain. Under the circumstances, the verdict does not aid the matter, nor can the verdict be construed, under the usual rules, with reference to the pleadings and proof so as to clarify the situation. Since the verdict is one which the law does not authorize, the judgment entered thereon must be, and is hereby, reversed."

See also Tobin v. People, 1882, 104 Ill. 565; State v. Hamilton, 1934, 172 S.C. 453, 174 S.E. 396; 32 Am.Jur., Larceny, section 155; and cases cited in Annotation, 136 A.L.R. 1087.

To summarize: Just as it is not for judges but for the jury, where a jury trial has been prayed, to find a verdict of guilty, however plain the case may appear to be, so judges may not assume to choose between alternatives available to the jury. Judges may not do so even for the laudable purpose of preventing the possibility of error on the jury's part. Likewise, if guilt is pronounced on two counts where under proper instructions conviction could be permitted on only one, neither the district judge nor the appellate judges may take it upon themselves to speculate which count the twelve jurors would have unanimously picked if they had been correctly instructed. Virginia Milanovich was entitled to have the choice made under proper instructions by the jury before whom she elected to be tried; without this, she may not be deprived of her liberty.

Since we cannot be certain what the jury would have decided if not erroneously charged, the doubt must be resolved in her favor. Either she should be given the benefit of the lesser sentence, or a new trial should be awarded.