## VENEY *v.* STATE

[No. 165, September Term, 1961.]

(Four Appeals In One Record)

*Decided February 22, 1962.*

The cause was argued before Brune, C. J., and Henderson, Hammond, Prescott and Horney, JJ.

*Dallas F. Nicholas,* for appellant.

*Lawrence F. Rodowsky, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Saul A. Harris* and *John W. Sause, Jr., State's Attorney* and *Assistant State's Attorney,* respectively, of Baltimore City, on the brief, for appellee.

Prescott, J., delivered the opinion of the Court.

This case involves four appeals in one record from judgments entered after verdicts of guilty by a judge in the Criminal Court of Baltimore, sitting without a jury. The appellant was found guilty of assaulting with intent to murder one Max Schwartz, case No. 1149; assaulting with intent to murder a certain Melvin Gardner, case No. 1151; attempting to rob said Schwartz with a deadly weapon, case No. 1150; and carrying a concealed weapon, case No. 1152.[1] The indictments contained other counts, but none of them, except one, has any bearing upon the outcome of the case.

---

1. Cases Nos. 1149 and 1151 were brought under Code (1957), Article 27, Section 12; case No. 1150 under Section 488; and case No. 1152 under Section 36.

Appellant enumerates three assignments of error in his brief, but they are, in reality, two; consequently, although all of his contentions will be answered, this will be done under two headings.

I

Under this heading, we have the familiar and oft-repeated claim of insufficiency of the evidence to support the convictions. Apparently in a commendable effort to save costs, the testimony is set forth in narrative form. It leaves no doubt as to its sufficiency to support all of the above convictions.

Schwartz testified that he was the owner and operator of a grocery and liquor store located in Baltimore City. On March 11, 1961, when he and his clerk, Gardner, were alone in the store, a male Negro entered and ordered a quarter of a pound of cheese from the clerk. While the clerk was getting the cheese, the customer moved quickly toward the witness and drew a revolver from under his coat, pointing it at the witness. The witness promptly grabbed the gunman, who struck the witness with the gun, felling him to the floor. Gardner leaped over the counter and grappled with the gunman, who struck Gardner over the head with the gun also, and then ran to the front of the store, where he pointed the gun at the witness and pulled the trigger, but the gun failed to fire. He and Gardner together again went after the gunman, who again struck Gardner with the gun, and then tried to fire the gun, but it misfired a second time. The gunman ran out the front door pursued by Gardner, and just around the corner on Barnes Street the witness saw them on the ground, with Gardner on top. He called the police, who arrived in a few minutes and arrested the gunman. He positively identified the appellant as his assailant; and he required hospitalization as the result of needing some 15 to 18 stitches taken in his head.

Practically all, if not all, of Schwartz's testimony was corroborated by Gardner, who also identified appellant as the gunman. Gardner also stated that six stitches were required to be taken in his head; and when he and the appellant got around the corner on Barnes Street "he [appellant] went to click it [gun] like that at me," but before he could do so Gardner "went up underneath him and got to fighting."

Officer Janokowski testified that he and a fellow officer, as the result of a call, went to Schwartz's place of business, where he saw Schwartz with his white coat covered with blood. He approached the scene where Gardner and the appellant were on the ground fighting, and he forcibly took a .38 caliber revolver, containing four cartridges, from the right hand of the appellant.

Appellant, who had a previous record of convictions, including robbery, took the stand and denied having the gun, or having tried to rob Schwartz. He claimed that he was merely walking along the street, when he was attacked, without reason, from behind by Gardner.

Of course, the credibility of the witnesses is for the trier of facts; and, in reviewing the evidence to test its sufficiency, we do not, ordinarily, pass upon its weight, but only determine whether there is evidence and proper inferences from the evidence to support a finding of guilt. The State's evidence as we have summarized it above, if believed by the trial judge, and the proper inferences that may be legitimately drawn from it so clearly permit a finding of all the constitutent elements of the above crimes of which the appellant was found guilty, it would be a waste of time to set forth in detail the manner in which they do so. We hold there was no insufficiency in the evidence.

## II

The appellant's second contention is that the offense of carrying a concealed weapon was "merged" into the assaults with intent to murder and the attempted robbery with a dangerous weapon; hence, he was improperly convicted on the concealed weapon charge. The State counters by stating that, "even if it be assumed the ancient doctrine of merger of offenses has any vitality in Maryland today," the carrying of a concealed weapon constituted a separate and distinct crime, which did not "merge" into the other offenses.

When considering the proposition of merger of offenses, it is important to bear in mind the difference between the common-law doctrine of merger of offenses and the more modern concept of merger, which is allied to such closely affiliated titles as "Identity of Offenses," "Divisibility and

Merger of Offenses," and "Former Jeopardy," used by some authors, when writing upon the subject.

The same act or continuing transaction frequently gives rise to several offenses, felonies, or misdemeanors, or both. For instance, every robbery embraces a larceny; every murder by violence includes an assault and battery. The principle of merger of offenses and its intertwined principles mentioned above deal with such questions as whether an accused may be convicted of any one, or all, of the offenses, or whether one of them absorbs and merges the others, so that it alone constitutes the only criminal offense; and, if an accused be acquitted or convicted of one or more of the offenses, does such an acquittal or conviction act as a bar to subsequent prosecutions for the other offenses, upon the ground of double jeopardy.

The common-law doctrine of the merger of one offense in another, which was based upon certain historical differences in the incidents of trials of misdemeanors and felonies—such as the right to exercise challenges of jurors, the privilege of counsel,[2] and a conviction of felony entailed a forfeiture of property to the Crown—effectuated a merger when the same criminal act or continuing transaction constituted both a felony and a misdemeanor; the misdemeanor was extinguished by the felony and only the latter could be prosecuted. The rule did not apply unless there was identity of time, place and circumstances of the criminal transaction; and the offenses could not both be misdemeanors or both felonies, but had to be of different grades. *Gilpin v. State,* 142 Md. 464, 121 A. 354; *Williams v. State,* 205 Md. 470, 109 A. 2d 89; 1 *Wharton, Criminal Law & Procedure* (Anderson), § 33. As the reasons, or bases, for the common-law doctrine have long since ceased and disappeared, most jurisdictions, apparently applying the principle of *cessante ratione cessat lex,* have either abolished the common-law doctrine, or abrogated the rules of procedure founded upon it; and this is unquestionably true in Maryland.

---

2. At the celebrated trial of Sir Walter Raleigh in 1603, although the Crown was represented by Attorney General Coke, later Lord Chief Justice Coke, and Sir Walter was being tried for treason, he was required to plead his own defense, which he did very persuasively to many.

Code (1957), Article 27, Section 607; *Gilpin v. State* and *Williams v. State,* both *supra; Klein v. State,* 151 Md. 484, 135 A. 591. But this does not mean that the later and more modern concept of merger of offenses, whether it be considered under such terms as "double jeopardy," "merger," or "divisibility of offenses," fails to play an important role in criminal prosecutions today. For, as this Court pointed out when it quoted R.C.L. in *Gilpin, supra* (142 Md. p. 469) to the effect: " 'It [common-law merger] has no application where both crimes are misdemeanors or both are felonies, though one may be of a much graver character than the other and punishable with much greater severity; but in such a case another principle applies, that is if the lesser felony [or offense] is a necessary ingredient of the other, a conviction of one will bar a prosecution for the other by virtue of the twice in jeopardy rule. * * *.' " See also *Williams v. State, supra.*

Decisions and text-writers use various methods and formulae for testing whether one criminal episode merges and extinguishes another, but, when analyzed, they, in general, boil down to the rule as just stated in *Gilpin, supra.* 22 C.J.S., *Criminal Law,* § 10, states the true test of whether one criminal offense has merged into another is held to be not whether the two criminal acts are successive steps of the same transaction, but whether one crime necessarily involves the other. In *Commonwealth v. Ashe,* 21 A. 2d 920 (Pa.), the Court said:

> "When the 'transaction' consists of two or more criminal acts, the fact that the two acts are 'successive' does not require the conclusion that they have merged. Two crimes *may be* successive steps in *one* crime and therefore merge, as, e. g., larceny is merged in robbery, and assault and battery is merged in murder, or they may be two distinct crimes which do not merge. * * * When one of two criminal acts committed successively is not a necessary ingredient of the other, there may be a conviction and sentence for *both.*"

See also *Hochheimer, Criminal Law* (2d Ed.), § 9; and compare *Commonwealth v. McCusker,* 70 A. 2d 273 (Pa.). And in *Aaronson v. United States,* 175 F. 2d 41 (C. A., 4), Judge Soper, for the Court, said: "A single transaction may be an offense against two statutes if each statute requires proof of a fact which the other does not." And a like ruling was made by the same Court in the later case of *McGann v. United States,* 261 F. 2d 956, both cases citing the leading case of *Gaviers v. United States,* 220 U. S. 338. See also *Rouse v. State,* 202 Md. 481, 97 A. 2d 285.

This brings us to an appropriate place to apply the facts of the instant case to the principles of law outlined above. Our appellant was convicted of four crimes, as above stated, and the question posed for our determination is: Did the criminal act of carrying a concealed weapon become merged into either of the assaults with intent to murder or the attempt to commit robbery with a dangerous weapon? The simple answer is that in order to support the conviction on the concealed weapon charge, it was necessary to establish the fact that the accused was carrying the weapon *concealed;* a fact not necessary to have been proved in either of the cases involving assault with intent to murder, or the one charging attempted robbery. On the other hand, it was essential to establish an assault with intent to murder in cases 1149 and 1151 and an attempt to rob in case 1150, facts not required to be shown under the concealed weapon indictment. This brings the case directly within the rulings made in *Aaronson* and *McGann,* both *supra,* as well as *Gilpin,* also *supra,* since the lesser offense was not "a necessary ingredient" of any of the larger ones.

We have found no late case dealing specifically with the question, but in the early case of *State v. Livesay,* 30 Mo. App. 633, the court held flatly that carrying a concealed weapon was one offense, and the felonious use of it in shooting the prosecuting witness was another and distinct offense; hence the lesser criminal episode was not merged in the greater under any proper conception of the doctrine of merger. The Missouri Court was, we think, correct in its ruling; and it is in complete accord with the legal principles we have set forth above.

There is one further matter that requires consideration. The indictment in case No. 1152 contained two counts; the first charging the carrying of the deadly weapon concealed; the second that it was carried "openly with the intention and purpose of injuring a certain person whose name is to the jurors aforesaid unknown." The verdict in this case was a general one of guilty. There is not a scintilla of evidence to show that the appellant was carrying the weapon openly with the intention of injuring anyone "whose name * * * to the jurors [was] unknown."

Compare *Adams v. State*, 202 Md. 455, 97 A. 2d 281, reversed on other grounds, 347 U. S. 179. Hence, this case must be remanded for the entry of a verdict of not guilty on the second count; a slight moral victory for the appellant affording him no practical benefit.

> *Judgments in cases Nos. 1149, 1150 and 1151 affirmed; case No. 1152 remanded for the purpose of striking out the general verdict of guilty and the entry of a verdict of guilty on the first count, not guilty on the second count.*