705 A.2d 1128

**Richard A. LEWIS**

v.

**STATE of Maryland.**

**No. 54, Sept. Term, 1997.**

Court of Appeals of Maryland.

Feb. 13, 1998.

Julia Doyle Bernhardt, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Petitioner.

Emmet Davitt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for Respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, RAKER and WILNER, JJ., and ROBERT L. KARWACKI, Judge (retired), Specially Assigned.

RAKER, Judge.

Maryland Code (1957, 1996 Repl.Vol., 1997 Supp.), Article 27, § 286(f)[1] prohibits, *inter alia,* the possession with the intent to distribute 50 or more grams of crack cocaine. The penalty provision of § 286(f) states:

> (3)(i) A person convicted of violating paragraph (1) of this subsection is guilty of a felony and shall be sentenced as otherwise provided for in this section, except that it is mandatory upon the court to impose no less than 5 years'

---

[1]. Unless otherwise specified, all statutory references herein shall be to Maryland Code (1957, 1996 Repl.Vol., 1997 Supp.), Article 27.

imprisonment, and neither that term of imprisonment nor any part of it may be suspended.

(ii) The person may not be eligible for parole....

The issue presented for decision in this case is whether the limitation on parole eligibility expressed in § 286(f)(3)(ii) applies only to the 5 year minimum term of imprisonment the trial court must impose, or whether that prohibition against parole applies to the entire sentence imposed. We conclude that the General Assembly clearly intended the limitation on parole eligibility to apply only to the minimum term of imprisonment which the trial court must impose. Accordingly, we shall hold that the parole prohibition of § 286(f)(3)(ii) applies only to the mandatory, minimum 5 year period of incarceration.

## I.

During the evening of February 6, 1996, law enforcement agents from the Kent County Narcotics Task Force, the Kent County Sheriff's Office, the Chestertown Police Department, and the Maryland State Police executed two search warrants simultaneously at separate residences in Chestertown, Maryland. From one of the homes searched, the agents seized 211.2 grams of crack cocaine. Petitioner Richard Lewis later admitted that the cocaine seized belonged to him.

On February 23, 1996, the Grand Jury for Kent County indicted Lewis on the following charges: unlawfully acting as a drug kingpin in a conspiracy to distribute a controlled dangerous substance in violation of § 286(g), possession of 50 or more grams of crack cocaine with an intent to distribute that substance in violation of § 286(f), possession of cocaine with an intent to distribute that substance in contravention of § 286(a)(1), possession of cocaine with an intent to distribute that substance in a drug-free school zone in violation of § 286D, and simple possession of cocaine in violation of § 287(a). At a bench trial in the Circuit Court for Kent County on May 20, 1996, the trial court found Lewis guilty on all five counts. The court sentenced Lewis to: 20 years,

without the possibility of parole, for violating § 286(g); a concurrent 20 year term of imprisonment, without the possibility of parole, for violating § 286(f); and a consecutive 5 year term of incarceration for violating § 286D. For sentencing purposes, the trial court merged Lewis's convictions for possession of cocaine and possession of cocaine with an intent to distribute that substance into his conviction for possession of 50 or more grams of cocaine with an intent to distribute that substance.

Lewis noted a timely appeal. Before the Court of Special Appeals, Lewis argued, *inter alia,* that the trial court imposed an illegal sentence pursuant to his conviction for violating § 286(f). Rejecting that argument, the intermediate appellate court affirmed both of Lewis's convictions and his sentence in an unreported opinion. This Court then granted Lewis's petition for writ of certiorari to address that issue.

## II.

The State argues that by its plain terms, § 286(f)(3) bars parole for Lewis's entire 20 year term of imprisonment. The State reasons that subparagraph (3)(ii) unambiguously states that "[t]he person may not be eligible for parole." Therefore, the parole limitation applies to the entire duration of any sentence imposed. The State distinguishes prior cases, which construed similar language in a contrary manner, by noting that § 286(f) is structured differently than the statutes we have previously interpreted. Specifically, the State contends that the parole limitation of § 286(f)(3)(ii) is offset as a discrete subparagraph, whereas previously construed provisions limiting parole were written in such a way as to render their application ambiguous. Hence, the State argues, the wording of § 286(f)(3)(ii) clearly and unambiguously extends the limitation on parole under § 286(f) to the entire sentence imposed by the trial court.

Conversely, Lewis notes that in two prior cases, this Court has found language similar to that of § 286(f)(3) to be ambiguous. Lewis argues that any minor stylistic differences be-

tween § 286(f)(3)(ii) and the similar statutory provisions previously construed do not signify that the General Assembly intended those provisions to be interpreted differently. Thus, § 286(f)(3) is ambiguous, and the rule of lenity applies. In addition, Lewis contends that if the Legislature had intended § 286(f)(3) to mean "not less than five nor more than twenty years without the possibility of parole," it would have said expressly that, given the fact that the General Assembly used precisely that language in simultaneously enacting § 286(g).

## III.

In construing a legislative enactment, the paramount objective is to ascertain and give effect to the intent of the Legislature. *Harris v. State,* 344 Md. 497, 510, 687 A.2d 970, 976, *cert. denied sub nom. Koenig v. Maryland,* —— U.S. ——, 118 S.Ct. 605, 139 L.Ed.2d 492 (1997); *Tapscott v. State,* 343 Md. 650, 657, 684 A.2d 439, 442 (1996); *Frazier v. Warfield,* 13 Md. 279, 301 (1859). To discern legislative intent, we look first to the language of the statute, giving those words their ordinary and natural meaning. *Gardner v. State,* 344 Md. 642, 647–48, 689 A.2d 610, 612–13 (1997). When the plain meaning of the language is clear and unambiguous, and consistent with both the broad purposes of the legislation, and the specific purpose of the provision being interpreted, our inquiry is at an end. *Philip Electronics v. Wright,* 348 Md. 209, 216–17, 703 A.2d 150, 153 (1997); *Frank v. Baltimore County,* 284 Md. 655, 661, 399 A.2d 250, 254 (1979). If, however, the meaning of the plain language is ambiguous or unclear, we seek to discern legislative intent from surrounding circumstances, such as legislative history, prior case law, and the purposes upon which the statutory framework was based. *Haupt v. State,* 340 Md. 462, 471, 667 A.2d 179, 183 (1995). As we recently observed in *Greco v. State,* 347 Md. 423, 429, 701 A.2d 419, 421 (1997), in the context of statutory construction, "ambiguity" is most accurately defined as "reasonably capable of more than one meaning."

When the words of a statutory provision are reasonably capable of more than one meaning, and we examine the circumstances surrounding the enactment of a legislative provision in an effort to discern legislative intent, we interpret the meaning and effect of the language in light of the objectives and purposes of the provision enacted. *Gargliano v. State,* 334 Md. 428, 435, 639 A.2d 675, 678 (1994); *see Kaczorowski v. City of Baltimore,* 309 Md. 505, 513–16, 525 A.2d 628, 632–33 (1987). Such an interpretation must be reasonable and consonant with logic and common sense. *Armstead v. State,* 342 Md. 38, 56, 673 A.2d 221, 229 (1996). In addition, we seek to avoid construing a statute in a manner that leads to an illogical or untenable outcome. *Greco,* 347 Md. at 429, 701 A.2d at 422; *Fraternal Order of Police v. Mehrling,* 343 Md. 155, 174, 680 A.2d 1052, 1062 (1996). Bearing these principles in mind, we turn now to the statutory provision at issue in this case.

### IV.

As set forth below, we initially agree with Lewis that the plain language of § 286(f)(3) is ambiguous with respect to the issue in this case. Yet, our further examination of the legislative history and circumstances surrounding the enactment of § 286(f) convinces us that the General Assembly intended the parole limitation of that subsection to apply only to the mandatory, minimum period of incarceration which may not be suspended.

### A.

Section 286 of Article 27 provides multiple penalties for, *inter alia,* the possession of a controlled dangerous substance in sufficient quantity to reasonably indicate an intent to distribute that substance. Under the statutory framework, a person convicted of that offense faces varying degrees of punishment based upon the quantity and nature of the illegal substance possessed, or based upon the prior criminal history of that offender.

Subsection (a) of § 286 codifies the offense of possession of a controlled dangerous substance with the intent to distribute that substance, and § 286(b) provides the garden variety penalty for violating § 286(a). Subsections (c), (d), and (e) of § 286, which we have previously referred to as the "two-time loser," "three-time loser," and "four-time loser" provisions of § 286, form a comprehensive scheme of graduated mandatory punishment for repeat violators of the statute. *See Gargliano v. State,* 334 Md. 428, 440–41, 639 A.2d 675, 680–81 (1994).

Subsection (f) of § 286, at issue here, provides, *inter alia,* an enhanced, mandatory penalty upon conviction for possession with the intent to distribute 50 or more grams of cocaine base, commonly known as "crack." Also relevant in this case, Maryland's "drug kingpin" prohibition, codified as § 286(g), compels the imposition of an enhanced, mandatory penalty when the State proves beyond a reasonable doubt both that an individual possessed with the intent to distribute controlled dangerous substances in the amount proscribed under subsection (f), and that the individual was a coconspirator and occupied the position of an organizer, supervisor, financier, or manager in a conspiracy to manufacture, distribute, dispense, bring into, or transport in the State controlled dangerous substances.

The qualification on parole eligibility at issue in this case is codified within the sentencing provision of § 286(f), and reads in pertinent part as follows:

(3) (i) A person convicted of violating paragraph (1) of this subsection is guilty of a felony and shall be sentenced as otherwise provided for in this section, except that it is mandatory upon the court to impose no less than 5 years' imprisonment, and neither that term of imprisonment nor any part of it may be suspended.

(ii) The person may not be eligible for parole....

On two previous occasions, we have construed statutory language similar to the provision at issue in this case, and in both cases we have found the language to be ambiguous. In *Malcolm v. State,* 314 Md. 221, 550 A.2d 670 (1988), the

defendant was convicted of possession with the intent to distribute a controlled dangerous substance. The trial judge sentenced Malcolm to twenty years without the possibility of parole for that offense. *Id.* at 225, 550 A.2d at 672. In addressing Malcolm's argument that the trial court imposed an illegal sentence, we interpreted the relevant sentencing provision, then codified as § 286(b)(2) of Maryland Code (1957, 1982 Repl.Vol., 1985 Supp.), Article 27.[2] That provision declared that a person convicted of violating § 286(a) was:

> guilty of a felony and ... subject to imprisonment for not more than 20 years.... Any person who has previously been convicted under this paragraph shall be sentenced to imprisonment for not less than 10 years. Neither the sentence nor any part of it may be suspended, and the person shall not be eligible for parole....

The Court agreed with Malcolm that this language did not authorize the trial court to impose a limitation on parole eligibility beyond the length of the mandatory minimum sentence of 10 years. We reasoned that:

> [T]his language is ambiguous with respect to whether the limitation of eligibility for parole applies only to the mandatory ten year sentence, or may be applied as well to any longer sentence that is imposed.

*Malcolm,* 314 Md. at 234, 550 A.2d at 676. Because the provision enhancing the sentence was ambiguous, the Court concluded that this ambiguity must be resolved in favor of the defendant. *Id.* at 234–35, 550 A.2d at 676. Thus, we held "that *only* the first ten years of Malcolm's sentence was subject to the limitation of [no] eligibility for parole." *Id.* at 235, 550 A.2d at 677 (footnote omitted).

This Court next interpreted similar language in *Taylor v. State,* 333 Md. 229, 634 A.2d 1322 (1993). Taylor was convicted of one count of first degree murder, five counts of theft, and five counts of forgery. *Id.* at 231, 634 A.2d at 1323. He

---

**2.** Section 286 was amended in 1988. At that time, § 286(b)(2) was recodified as current subsection (c) without substantial change.

had two prior convictions for crimes of violence. *Id.* Accordingly, the State notified Taylor that it would seek enhanced punishment pursuant to Maryland Code (1957, 1992 Repl.Vol.), Article 27, § 643B, which provided for a mandatory 25 year sentence upon conviction for a third crime of violence, so long as the offender had served one term of confinement in a correctional institution.

The trial court sentenced Taylor to life imprisonment without the possibility of parole for the first degree murder conviction. *Taylor,* 333 Md. at 232, 634 A.2d at 1323. The parole restriction was imposed because the trial court concluded that § 643B required such a result under the circumstances of that case. *Id.* at 233–34, 634 A.2d at 1324. The sentencing provision at issue in *Taylor,* Maryland Code (1957, 1992 Repl.Vol.), Article 27, § 643B(c), read in pertinent part as follows:

> (c) *Third conviction of crime of violence.*—Any person who (1) has been convicted on two separate occasions of a crime of violence where the convictions do not arise from a single incident, and (2) has served at least one term of confinement in a correctional institution as a result of a conviction of a crime of violence, shall be sentenced, on being convicted a third time of a crime of violence, to imprisonment for the term allowed by law, but, in any event, not less than 25 years. Neither the sentence nor any part of it may be suspended, and the person shall not be eligible for parole....

Relying on this Court's decision in *Malcolm,* Taylor argued that the limitation on parole eligibility in § 643B(c) applied only to the minimum term of imprisonment of 25 years, and not to any additional period of incarceration imposed beyond 25 years. *Taylor,* 333 Md. at 234–35, 634 A.2d at 1324–25. On the other hand, just as in this case, the State contended in *Taylor* "that *Malcolm*'s reasoning is inapplicable to the case *sub judice* because, unlike the language in former § 286(b)(2), the statute in the instant case is clear and unambiguous." *Id.* at 235, 634 A.2d at 1325. We rejected the State's argument:

> The two statutes are similarly worded, and similar ambiguities arise. It is difficult to discern from the language of § 643B(c) alone whether the phrase "the sentence" refers to the entire "term allowed by law," or whether "the sentence" refers to only the 25–year minimum sentence which immediately precedes that phrase.

*Id.*

Because the plain language of the statutory provision was ambiguous, we next examined the history of the legislative scheme in an effort to discern the intent of the Legislature. *Id.* at 236, 634 A.2d at 1325. Ultimately, however, that search did not produce persuasive indicia of legislative intent; rather, we concluded that § 643B(c) was, "in the very least, ambiguous with respect to the limitation on parole eligibility." *Id.* at 237, 634 A.2d at 1325. Hence, we adopted the more lenient interpretation of the statute.

In the context of the issue we resolve in this case, the structure of § 286(f)(3) is nearly identical to the limitations on parole eligibility construed in *Malcolm* and *Taylor*. In this case, as in *Malcolm* and *Taylor*, the statute declares the authority of the trial court generally to impose punishment, but then qualifies that authority by stating that the court must impose a mandatory, minimum term of imprisonment. In this case, as in *Malcolm* and *Taylor*, the sentencing provision then mandates that "the person may [or shall] not be eligible for parole."

In both *Malcolm* and *Taylor*, we concluded that the plain language of those provisions was ambiguous. That reasoning is equally applicable here. *See Gargliano*, 334 Md. at 436, 639 A.2d at 679 (reasoning the enhanced penalty provisions of § 286 "must be construed in light of the construction we have previously given to similarly worded enhanced penalty statutes"). Based upon the text of the statute, it is unclear whether the limitation on parole eligibility expressed in § 286(f)(3)(ii) applies to the entire sentence imposed, or whether that limitation applies to only the minimum 5 year term of imprisonment.

Moreover, we reject the State's contention that by placing the limitation on parole eligibility in a separate and distinct subparagraph, the Legislature clearly manifested the intent that the limitation should apply to the entire sentence imposed by the trial court. This Court recently observed that past experience demonstrates that when the General Assembly wishes to engraft a mandatory penalty to a sentencing provision, "it has done so unequivocally, in clear and unambiguous terms." *Gardner v. State,* 344 Md. 642, 652, 689 A.2d 610, 615 (1997). The stylistic difference between § 286(f)(3)(ii), and the statutory provisions at issue in *Malcolm* and *Taylor,* simply cannot shoulder the weight that the State would have it bear: unambiguously demonstrating the intent to increase a criminal sentence from 20 years, 5 of which is without the possibility of parole, to a term of imprisonment of 20 years without the possibility of parole. If the Legislature had wanted to subject a criminal defendant to the latter sentence upon conviction for violating § 286(f), then the plain words of the sentencing provision would have expressed that intent. *See Gardner,* 344 Md. at 652–53, 689 A.2d at 615–16; *DeLeon v. State,* 102 Md.App. 58, 85, 648 A.2d 1053, 1066 (1994) ("What emerges from ch. 287 of the Acts of 1989 in its entirety is that when the Legislature wants specifically to provide enhanced penalties for drug conspirators, it knows how to do so expressly and does not rely on implication.").

B.

Because the plain language of § 286(f)(3) is ambiguous, we turn to the circumstances surrounding the enactment of that provision in an effort to discern the legislative intent. That examination leads to the conclusion that the parole limitation of § 286(f)(3) applies only to the minimum 5 year term of imprisonment which may not be suspended by the trial court, rather than to any period of incarceration, beyond 5 years, actually imposed. That conclusion is based, in turn, on the relationship of that provision with § 286(g), and on the illogical consequences produced by the contrary interpretation urged by the State in this case.

To discern the intent of the Legislature in enacting a statutory provision whose plain language is ambiguous, it is often helpful to examine the statute in its entirety, and to consider the interrelationship of its provisions. *Coburn v. Coburn*, 342 Md. 244, 256, 674 A.2d 951, 957 (1996); *Vest v. Giant Food Stores, Inc.*, 329 Md. 461, 466–67, 620 A.2d 340, 342 (1993). Indeed, this principle is one of long standing under Maryland law:

> It is a well recognized canon of interpretation, that if any part of a statute be intricate, obscure or doubtful, the proper way to discover the intent, is to consider the other parts of the act; for the words and meaning of one part of a statute frequently lead to the sense of another. . . .

*Magruder v. Carroll*, 4 Md. 335, 348 (1853). In this case, to discern the meaning of § 286(f), we turn to its sister provision, § 286(g).

Both subsections (f) and (g) of § 286 were enacted as part of Maryland's "Drug Kingpin Act" by ch. 287 of the Acts of 1989. The subsection and paragraph prescribing incarceration for violating § 286(g) state:

> (2) A drug kingpin who conspires to manufacture, distribute, dispense, bring into, or transport in the State controlled dangerous substances in one or more of the amounts described under subsection (f) of this section is guilty of a felony and on conviction is subject to:
>
> (i) Imprisonment for not less than 20 nor more than 40 years without the possibility of parole, and it is mandatory on the court to impose no less than 20 years' imprisonment, no part of which may be suspended. . . .

Under the plain language of § 286(g)(2)(i), there is simply no ambiguity with regard to the applicability of the no-parole provision: it clearly and unambiguously applies to the entire sentence imposed. As noted, § 286(f) and § 286(g) were enacted simultaneously. As the text of the penalty provision of § 286(g) makes clear, when the General Assembly enacted § 286(f), that body knew how to clearly express its intent that the entire sentence imposed be served without the possibility

of parole. The fact that the Legislature did not clearly express such an intent in drafting § 286(f), while simultaneously enacting § 286(g), leads to the fair inference that it intended § 286(f)(3)(ii) to apply only to the minimum 5 year term of imprisonment.

■ This conclusion is further reinforced by an examination of the practical consequences of the interpretation of § 286(f)(3)(ii) advocated by the State in this case. In our effort to discern legislative intent, "we consider not only the objectives and purpose of the enactment, but the consequences resulting from one construction rather than another." *Blaine v. Blaine,* 336 Md. 49, 69, 646 A.2d 413, 422 (1994) (citing *Kaczorowski v. City of Baltimore,* 309 Md. 505, 513, 525 A.2d 628, 632 (1987)); *see County Commissioners v. Bell Atlantic,* 346 Md. 160, 178–79, 695 A.2d 171, 180–81 (1997). In addition, in construing a legislative enactment, we seek to avoid an illogical or untenable outcome. *Philip Electronics v. Wright,* 348 Md. 209, 216, 703 A.2d 150, 153 (1997); *Hyle v. MVA,* 348 Md. 143, 148, 702 A.2d 760, 762 (1997).

■ As is clear from the Court's holding in *Taylor v. State,* 333 Md. 229, 237, 634 A.2d 1322, 1326 (1993), the limitation imposed by § 286(f)(3)(i) on the trial court's authority to suspend a sentence applies only to the minimum term of imprisonment mandated by that subparagraph of the statute. By contrast, under the interpretation of § 286(f)(3)(ii) urged by the State, the entire sentence imposed would have to be served without the possibility of parole. Thus, were the trial court to impose a 20 year sentence, with all but 5 years suspended, upon the defendant's release from prison, he or she would be serving a 'suspended sentence, with no possibility of parole.' Such a result can, at best, be characterized as anomalous, and nothing in the plain language or legislative history of § 286(f) suggests such a highly unusual interpretation.

As we have noted on prior occasions:

"It has been called a golden rule of statutory interpretation that unreasonableness of the result produced by one among

alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result."

*D & Y, Inc. v. Winston,* 320 Md. 534, 538, 578 A.2d 1177, 1179–80 (1990) (quoting 2A SUTHERLAND STATUTORY CONSTRUCTION § 45.12 (4th ed.1984)); *see Dickerson v. State,* 324 Md. 163, 171, 596 A.2d 648, 652 (1991). We shall not interpret a statute to produce unusual or extraordinary results, absent the clear legislative intent to enact such a provision.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART, REVERSED IN PART. CASE RE-MANDED TO THE COURT OF SPECIAL APPEALS WITH INSTRUCTIONS TO REMAND TO THE CIRCUIT COURT FOR KENT COUNTY FOR FURTHER PROCEED-INGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY KENT COUNTY.*