766 A.2d 639

**In re COLBY H.**

**No. 56, Sept. Term, 2000.**

Court of Appeals of Maryland.

Feb. 12, 2001.

Claudia A. Cortese, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Celia Anderson Davis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and LAWRENCE F. RODOWSKY (retired, specially assigned), JJ.

CATHELL, Judge.

On December 29, 1998, a petition was filed by the State's Attorney for Baltimore City alleging that petitioner, Colby H., was a delinquent child based upon four alleged firearm violations.[1] On January 15, 1999, an adjudicatory hearing was held before a master for the Circuit Court for Baltimore City where the master made a finding of fact that petitioner was involved in one of the four counts against him[2]—carrying a concealed weapon in violation of Maryland Code (1957, 1996 Repl.Vol.), Article 27, section 36.[3] On February 9, 1999, a disposition hearing was held by the master at which time it was recommended that petitioner be placed on probation to the Maryland Department of Juvenile Justice for an indefinite period.[4]

Petitioner filed a Notice of Exceptions on February 11, 1999. On March 8, 1999, these exceptions were heard by a judge in the Circuit Court for Baltimore City. At that hearing, the court held its decision *sub curia* so that it could listen to the recording of the master's adjudicatory hearing. On April

---

1. At the time of the alleged violations, petitioner was fourteen years of age.

2. Petitioner was also charged with possession of a firearm while under the age of 21 in violation of Maryland Code (1957, 1996 Repl.Vol., 2000 Cum.Supp.), Article 27, section 445(e), possession of ammunition while under the age of 21 in violation of Article 27, section 445(e), and carrying a shotgun with a barrel of over fourteen inches in violation of Article 19, section 97 of the Baltimore City Code (currently codified as Baltimore City Code (2000), Article 19, section 59.1). The juvenile master found facts not sustained on these three counts.

3. All future references to Article 27, section 36 are references to Maryland Code (1957, 1996 Repl.Vol.), Article 27, section 36.

4. Petitioner was also instructed to continue receiving drug and alcohol counseling and remain in the education program in which he was already enrolled.

16, 1999, after listening to the recording, the court overruled petitioner's exceptions. A timely appeal to the Court of Special Appeals was noted on May 3, 1999. In an unreported decision filed April 17, 2000, the Court of Special Appeals upheld the trial court's delinquency finding. We granted petitioner's Writ of Certiorari to answer one question:

Is the evidence sufficient to establish "wearing and carrying" of a dangerous or deadly weapon in violation of Md. Ann.Code, Art. 27, § 36, where the prosecution proves nothing more than [that] the police found a shotgun under [a] mattress in Respondent's room at a time when Respondent was not even home?

We hold that, under the circumstances of this case, the evidence was insufficient to establish "wearing and carrying" of a dangerous or deadly weapon in violation of Article 27, section 36. Accordingly, we shall reverse the decision of the Court of Special Appeals.

## Facts

On December 28, 1998, petitioner's mother, Ms. H., found a shotgun under the mattress in petitioner's bedroom and called the police. Officer Thomas Sernek received the call and responded to petitioner's home at 4102 Eierman Avenue in Baltimore City. Upon his arrival, Officer Sernek was met by petitioner's mother who explained that she had found the gun when she was cleaning petitioner's room. She led the officer to petitioner's bedroom where, under petitioner's mattress, Officer Sernek discovered a pistol-gripped shotgun. He seized the weapon and unloaded three shotgun shells from it. Petitioner was not home at the time the shotgun was found by his mother nor was he home at the time it was seized by Officer Sernek.

After seizing the weapon, Officer Sernek transported petitioner's mother to another location, returned to petitioner's home with another officer, and knocked on the front door.[5] At

5. The record indicates neither where petitioner's mother was taken nor how much time elapsed before Officer Sernek returned to 4102 Eier-

this time, petitioner was home and when he answered the door, he was arrested by the two officers and transported to the Northern District Police Station for processing. Officer Sernek testified at the adjudication hearing that petitioner, after being properly advised of his *Miranda* rights, voluntarily stated that he had purchased the shotgun from a "junkie" on a street corner for $20.00.

At the January 15, 2000 adjudicatory hearing in the Circuit Court for Baltimore City, the juvenile master found that petitioner

> had purchased the gun and that he had hidden the gun under the mattress. [The master] made the inference that [petitioner] concealed the gun from the time he bought it until the time he hid it under the mattress.

Based on this finding of fact, the juvenile master found petitioner not involved on the first three counts and found petitioner involved on the fourth count against him—carrying a concealed weapon in violation of Article 27, section 36. On February 9, 1999, a disposition hearing was held at which time it was recommended that petitioner be placed on probation to the Maryland Department of Juvenile Justice.

Petitioner filed a Notice of Exceptions on February 11, 1999. These exceptions were heard on March 8, 1999 by a judge in the Circuit Court for Baltimore City. At that hearing, the court held its decision *sub curia* so that it could listen to the recording of the adjudicatory hearing. The court, at the hearing, overruled petitioner's exceptions finding that the loaded shotgun was a dangerous weapon and adopted the master's finding that petitioner was involved with illegally wearing or carrying it. The court agreed with the master's inference that petitioner "had to wear or carry the shotgun from the street corner to his home." Additionally, the court found that the weapon's presence under petitioner's mattress "may satisfy the 'in such proximity to him' requirement as to

---

man Avenue. The record reflects, however, that he did return the same day he seized the weapon. Petitioner was found "not involved" with possession of an illegal weapon. That issue, therefore, is not before us.

make it available for his immediate use and therefore satisfies the standard." The court concluded:

> Based on my own independent review, I do believe that it's a proper inference that [petitioner] would have to wear or carry the shot gun from the street corner to his home, and if the shot gun was received [concealed?] or located underneath his mattress, I believe it satisfies the "in close proximity to him requirement" of the statute. Really, the next quick argument raised by [petitioner], is that the person carrying the weapon must have the general intent to carry the instrument for [its] use as a weapon either offensively or in defense. This is a question of fact to be determined by the fact finder based on all the circumstances.... In this case, the controverted [sic ?] testimony is we have a 14 year-old hiding a loaded and operable shot gun, with a pistol grip, under his mattress, after admittedly buying it on a street corner. I do believe, based on that, that the [c]ourt can infer the intent necessary under the statu[t]e. Next, [petitioner] [posits] in his Memorandum of law, that a conviction cannot lay where a weapon is found in [petitioner's] home. There is a discussion about the statute having potentially far reaching implications of public policy. I do think, that it should be clear, as a result of this [c]ourt's decision, that a 14 year-old has no legal right to possess and buy a firearm. He is not an adult homeowner in legal possession of a shotgun and therefore, it is not needed to protect his home and his family. Indeed, the purpose of a pistol grip on a shot gun is to make the weapon concealable, which is not a concern when a weapon is discovered concealed in a home.... Accordingly, for the aforegoing reasons, and based upon this [c]ourt's own independent review of the record, I do find that [petitioner] carried a dangerous and deadly weapon concealed upon, or about his person, or in such proximity to him as would make it available for his immediate use, and he did have the general intent to carry the instrument for [its] use as a weapon, either offensively or defensively. Accordingly, based on this [c]ourt's own independent review of the record, I find that the State had

satisfied [its] burden beyond a reasonable doubt and accordingly, I will deny [petitioner's] exception.

The only evidence presented at the adjudicatory hearing was petitioner's statement to the officer that he bought the weapon on a street corner and the fact that his mother, and the officer, found it under his mattress in his bedroom in his home. There was absolutely no other evidence regarding the status of the shotgun from the time it was purchased to the time that it was discovered by petitioner's mother. The record does not reflect when Colby H. purchased the weapon, the specific location of its purchase, when the purchase was made, the modality of conveyance of the weapon from the street corner to the place it was found, or the identity of who conveyed it.

On appeal, the Court of Special Appeals rejected as unsupported by fact the juvenile master's inference that petitioner "had worn or carried the shot gun concealed 'on or about his person' in order to transport the gun from the street corner where he acquired it to his bedroom." That court acknowledged that the State had directly proved that petitioner had purchased a dangerous weapon on an unnamed street corner from a "junkie" and that this dangerous weapon was found in petitioner's bedroom under his mattress. However, that court also recognized and held that there was absolutely no evidence presented that petitioner ever concealed the weapon when he transported it from the corner to his residence. The Court of Special Appeals stated:

> The record does not disclose either the time of day or the place where [petitioner] purchased the weapon. The shot gun could have been purchased ten feet from [petitioner's] front door or ten miles away from his home. The sale could have been made at 3:00 a.m. when no one else was around, or at high noon when hundreds of people might have seen [petitioner] if he had dared to carry the weapon openly. The trier of fact had no knowledge as to whether [petitioner] walked home with the shot gun or whether he had someone drive him home. With so little information, it simply cannot be inferred legitimately that [petitioner] con-

cealed the weapon when he transported it from the place of purchase to his home.[6]

We agree.   The Court of Special Appeals did hold, however, that there was sufficient proof to infer legitimately that the weapon, while under the mattress, was concealed and in such proximity to petitioner as would make it available to him for immediate use.   Therefore, the Court of Special Appeals affirmed the judgment of the trial court and held "that there was sufficient evidence from which a reasonable fact-finder could conclude, beyond a reasonable doubt, that [petitioner] violated Section 36(a)."   We disagree with this holding.   The evidence was insufficient to establish that petitioner illegally wore and carried a dangerous or deadly weapon concealed upon his person in violation of Article 27, section 36.

## Part One

## Article 27, Section 36

The threshold issue before this Court is to determine the scope of Maryland's concealed weapon statute and whether it applies to legal weapons [7] stored in a Maryland resident's home.   Maryland Annotated Code (1957, 1996 Repl.Vol.), Article 27, section 36 provides:

> **§ 36.   Carrying or wearing concealed weapon;  carrying openly with intent to injure;  carrying by person under eighteen at night in certain counties.**
>
> (a) *In general.*—(1)   *Every person who shall wear or carry* any dirk knife, bowie knife, switchblade knife, star knife, sandclub, metal knuckles, razor, nunchaku, or *any*

---

6.   The State argued in its brief and during oral argument that we should reverse this portion of the decision of the Court of Special Appeals, thus reinstating the trial court's ruling.   This issue was neither subsumed within the question presented in the Petition for Writ of Certiorari nor was it raised by the State in a cross-petition.   Therefore, we need not address this issue further as it is not properly before this Court, although we are in agreement with the Court of Special Appeals in respect to this issue.

7.   We reiterate, Colby H. was exonerated at trial as to illegal, simple possession of the weapon at issue.

*other dangerous or deadly weapon of any kind, whatsoever* (penknives without switchblade and handguns, excepted) *concealed upon or about his person,* and every person who shall wear or carry any such weapon, chemical mace, pepper mace, or tear gas device openly with the intent or purpose of injuring any person in any unlawful manner, *shall be guilty of a misdemeanor,* and upon conviction, shall be fined not more than $1,000 or be imprisoned in jail, or sentenced to the Maryland Department of Correction for not more than three years. [Some emphasis added.]

When attempting to discern the intention of the Legislature in enacting a particular statute, we have recently said in *Edgewater Liquors, Inc. v. Liston,* 349 Md. 803, 709 A.2d 1301 (1998):

"In construing the meaning of a word in a statute, the cardinal rule is to ascertain and carry out the real legislative intention." Legislative intent generally is derived from the words of the statute at issue. "We are not constrained, however, by ... 'the literal or usual meaning' of the terms at issue." "Furthermore, we do not read statutory language 'in isolation or out of context [but construe it] in light of the legislature's general purpose and in the context of the statute as a whole.'"

*Id.* at 807–08, 709 A.2d at 1303 (internal citations omitted) (alteration in original). We commented in an earlier case:

When we pursue the context of statutory language, we are not limited to the words of the statute as they are printed in the Annotated Code. We may and often must consider other "external manifestations" or "persuasive evidence," including a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case.

... Thus, in *State v. One 1983 Chevrolet Van,* 309 Md. 327, 524 A.2d 51 (1987), ... [a]lthough we did not describe any of the statutes involved in that case as ambiguous or uncertain, we did search for legislative purpose or meaning—what Judge Orth, writing for the Court, described as "the legislative scheme." ... *See also Ogrinz v. James,* 309 Md. 381, 524 A.2d 77 (1987), in which we considered legislative history (a committee report) to assist in construing legislation that we did not identify as ambiguous or of uncertain meaning.

*Kaczorowski v. Mayor and City Council of Baltimore,* 309 Md. 505, 514–15, 525 A.2d 628, 632–33 (1987); *see Laznovsky v. Laznovsky,* 357 Md. 586, 606–07, 745 A.2d 1054, 1065 (2000); *State v. Bell,* 351 Md. 709, 717–19, 720 A.2d 311, 315–16 (1998); *see also Williams v. Mayor & City Council of Baltimore,* 359 Md. 101, 115–17, 753 A.2d 41, 49 (2000); *Riemer v. Columbia Medical Plan,* 358 Md. 222, 235–36, 747 A.2d 677, 684–85 (2000).

The language of the statute at issue creates one offense— the carrying of a dangerous weapon under either of two circumstances: (1) concealed; or (2) openly with the intent to injure. *Eldridge v. State,* 329 Md. 307, 313, 619 A.2d 531, 534 (1993). In the case *sub judice,* we are concerned with the first way the offense can be committed—by carrying a concealed dangerous weapon. For our analysis it will be helpful to reduce the statute to the language of the statute pertinent to the case at bar: "Every person who shall wear or carry ... any ... dangerous or deadly weapon of any kind, whatsoever ... concealed upon or about his person, ... shall be guilty of a misdemeanor...."

■ Looking to the plain language of the statute we recognize that there are three distinct elements necessary to constitute a violation. First, the weapon in question must be one of the weapons listed or considered to be a dangerous or deadly weapon. In *Anderson v. State,* 328 Md. 426, 438, 614 A.2d 963, 968 (1992), we said:

In order to violate § 36(a) by the concealed wearing or carrying of an instrument which has not legislatively been declared to be a dangerous or deadly weapon *per se*, the trier of fact must first determine whether the instrument constitutes a "dangerous or deadly weapon." The concealed carrying prohibition of § 36(a) is not violated simply because the instrument can be used to inflict serious or deadly harm. The person carrying the object must have at least the general intent to carry the instrument for its use as a weapon, either of offense or defense. It is a question of fact, to be decided based on all of the circumstances.

There is no question in the case at bar that the loaded, operable shotgun in question falls under the category as a dangerous and deadly weapon.[8]

Second, the person must be wearing or carrying a weapon. "Carry," taken in its plain meaning, is defined as "to move while supporting; convey; transport" or "to wear, hold, or have around one." *The Random House Dictionary of the English Language* 227 (1983). Similarly, "wear" is defined as

8. There was, however, discussion (during oral arguments) as to whether Article 27, section 36 is the controlling statute. No evidence was presented during trial from which we could determine the actual length of the pistol gripped shotgun seized from petitioner's bedroom. The only information provided about the weapon came in respect to the alleged violation of a municipal ordinance prohibiting the carrying of a shotgun with a barrel of over fourteen inches. Baltimore City Code, Art. 19, section 97. Petitioner was charged with violating that statute as well, but the court found the facts "not sustained." The length of the shotgun is determinative of the applicable statute. *See, generally, Parrison v. State*, 335 Md. 554, 644 A.2d 537 (1994). Maryland Code (1957, 1996 Repl.Vol., 2000 Cum.Supp.), section 36F(b) defines a "handgun" as "any pistol, revolver, or other firearm capable of being concealed on the person, *including a short-barreled shotgun* ..." and section 36F(e) defines "short-barreled shotgun" as "a shotgun having one or more barrels less than eighteen inches in length and any weapon made from a shotgun (whether by alteration, modification, or otherwise) if such weapon, as modified, has an overall length of less than twenty-six inches." If the pistol gripped shotgun met this definition, the applicable statute might have been Maryland Code (1957, 1996 Repl.Vol., 2000 Cum.Supp.) section 36B. There was no evidence presented that the shotgun was under 26 inches or that its barrels were under 18 inches.

"to carry or have on the body or about the person as a covering, equipment, ornament, or the like." *Id.* at 1616. Recently, the Supreme Court of the United States utilized *Black's Law Dictionary's* definition of "Carry arms or weapons" as "[t]o wear, bear or carry them upon the person or in the clothing or in a pocket, for the purpose of use, or for the purpose of being armed and ready for offensive or defensive action in case of a conflict with another person." *Muscarello v. United States,* 524 U.S. 125, 130, 118 S.Ct. 1911, 1915, 141 L.Ed.2d 111 (1998), quoting *Black's Law Dictionary* 214 (6th ed.1990). However, the Supreme Court in *Muscarello* also recognized another "form of an important, but secondary, meaning of 'carry,' a meaning that suggests support rather than movement or transportation, as when, for example, a column 'carries' the weight of an arch. In this sense a gangster might 'carry' a gun (in colloquial language, he might 'pack a gun') even though he does not move from his chair." *Id.* at 131, 118 S.Ct. at 1915–16, 141 L.Ed.2d 111 (citation omitted). The statute plainly states that it is a violation for a person to "*wear or carry* " a concealed deadly weapon. The weapon must be concealed *and* it must be either worn or carried. If it is neither worn nor carried, it is not illegal to conceal it. We hold that the Legislature merely intended that the weapon needed to be on the body or about the person and concealed. It is not necessary that the weapon actually be transported from place to place.

■ Third, the weapon must be concealed upon or about the person. In *Corbin v. State,* 237 Md. 486, 206 A.2d 809 (1965), we explained the scope of "upon or about" when we said that "[i]n order to support [a] conviction of the carrying or wearing a dangerous or deadly weapon, it [is] necessary that the State establish the fact that the accused was carrying the weapon *or that it was in such proximity to him as would make it available for his immediate use.*" *Id.* at 491, 206 A.2d at 812 (emphasis added) (citing *Veney v. State,* 227 Md. 608, 177 A.2d 883 (1962)). In *Corbin,* we held that Corbin was not in such proximity to two guns, which were concealed in his car while he was standing beside the car and therefore was

not in violation of Article 27, section 36. It is clear from *Corbin* that we have limited the term "wear" to include areas that are in very close proximity to an alleged offender.

In *Corbin*, we recognized that a deadly weapon needed to be in such close proximity to the person so as to be available for his immediate use in order to constitute a violation of Article 27, section 36. Such an interpretation makes sense in the context where the weapon concealed is in close proximity to the defendant, and it is "shown that the defendant had at least the 'general intent' to carry the instrument for use as a weapon." *State v. Brinkley*, 102 Md.App. 774, 779, 651 A.2d 465, 467 (1995); *see also Anderson*, 328 Md. at 443, 614 A.2d at 971 ("Factors to be considered include (1) the nature of the instrument, *i.e.*, its size, shape, condition and possible alteration; (2) the circumstances under which it is carried, *i.e.*, the time, place and situation in which defendant is found with it; (3) defendant's actions *vis-a-vis* the item; and (4) the place of concealment." (quoting *State v. Blea*, 100 N.M. 237, 238–39, 668 P.2d 1114, 1115–16 (Ct.App.1983))).

The State has merely proven that there was a weapon under petitioner's mattress and that the weapon was purchased by petitioner. We do not have any other facts before us concerning the circumstances surrounding the placement of the weapon beneath the mattress and the State has failed to demonstrate that petitioner had the general intent of doing anything other than placing the weapon in its hiding place in the bedroom of his home, presumably a place of safety to him.

In the case *sub judice*, the Court of Special Appeals agreed with the ruling of the trial judge and concluded that "although [petitioner] did not carry the gun while concealed, he concealed it in such close proximity to himself [under the mattress] that it was available for his immediate use." Under this interpretation of Article 27, section 36, the fact that petitioner was in close proximity with the shotgun at the time he concealed it under his mattress, although he was nowhere near at the time it was found, is sufficient to sustain a conviction. The State has proven, in the courts below, only

two instances where the weapon might have been in close proximity to petitioner and available for his immediate use—when he bought it and when he placed it under his mattress. That is not enough to sustain a conviction for possessing a concealed weapon.

■ The Court of Special Appeals' interpretation of Article 27, section 36 distorts the ruling of *Corbin* as it makes it a violation of Article 27, section 36 simply to conceal a deadly weapon.[9] The weapon was not discovered on petitioner while he was on the street or in a public place. In fact, as we discussed, *supra*, petitioner was not even home at the time the shotgun was found by his mother nor was he home at the time it was seized by Officer Sernek. The weapon was discovered and seized inside petitioner's place of residence when he was not present. He was not "carrying" or "wearing" it while it was concealed.

### Part Two

### Weapons on Private Property

The true issue in this case is whether a conviction of wearing and carrying a dangerous or deadly weapon in violation of Article 27, section 36, can be sustained where the weapon in question, otherwise legal to possess, is found in a place not in open view in the residence of the alleged offender but in close proximity to him. We hold that it cannot. *State v. Brinkley*, 102 Md.App. 774, 651 A.2d 465 (1995), relied on by the State, is distinguishable.

In *Brinkley*, the Court of Special Appeals first addressed the issue, which is presented today, "whether the crime of carrying a concealed weapon may be accomplished when the accused is on private property." *Id.* at 775, 651 A.2d at 465. Brinkley was a guest at a private residence in Montgomery County when the Maryland–National Capital Park Police executed a search warrant at the premises. He was clearly

---

9. The placing of a shotgun in a non-transparent gun cabinet and the placing of a knife in a drawer are acts of concealment.

"wearing" a weapon.  There was no evidence that the owner of the premises knew that Brinkley had a weapon on his person or anywhere on the property.  During a pat-down search of Brinkley, the police officers discovered a knife inside his left boot and he was charged with carrying a concealed weapon in violation of Article 27, section 36.  The trial court dismissed the charge ruling that Article 27, section 36 does not prohibit the carrying of a concealed weapon when the alleged offender is in a private residence.  The Court of Special Appeals held:

> In our view, application of section 36 to private property is not inconsistent with [the purposes of Maryland's criminal concealed weapons statutes].  Applying section 36 to private property would protect those "unsuspecting members of the public" who find themselves on private property when a dangerous or deadly weapon, previously concealed, is wielded at them.  There is no reason to believe that members of the public do not require protection from concealed weapons simply because they are situated on private property.  We believe section 36 was enacted to protect members of the public generally, whether they be located on private property or on a public street.

*Id.* at 778–79, 651 A.2d at 467 (footnote omitted).  In that case, there was no indication that Brinkley was the owner of the private property, or that the owner of the property had, in any way, given permission for Brinkley to carry the weapon there at issue concealed on Brinkley's person or even upon the property.  An owner of, or a resident in, or a guest invited by the owner or resident, when the owner or resident has knowledge of the weapon does not violate the provision of the statute at issue when he is on such private property and is in possession of a concealed weapon, otherwise legal to possess.

The State argues in its brief that Article 27, section 36 applies equally to both public and private property.  It bases its rationale on the premise that a private property exception exists concerning handguns in the relatively recent Maryland Code (1957, 1996 Repl.Vol., 2000 Cum.Supp.), Article 27, section 36B.  The State contends that if the Legislature had

wanted a private property exception within section 36 it would have expressly put one in that statute. We disagree with the State's reasoning.

Article 27, section 36 has remained substantially the same since 1886. *See* 1886 Md. Laws Ch. 375. In 1886, the corresponding statute provided:

> Every person not being a conservator of the peace entitled or required to carry such weapon as a part of his official equipment, who shall wear or carry any pistol, dirk-knife, bowie-knife, slung-shot, billy, sand-club, metal knuckles, razor or any other dangerous or deadly weapon of any kind whatsoever, (penknives excepted) concealed upon or about his person, and every person who shall carry or wear any such weapon openly with the intent or purpose of injuring any person, shall, upon conviction thereof, be fined not more than five hundred dollars or be imprisoned not more than six months in jail or the House of Correction.

It is evident from the wording of the statute as originally enacted in 1886 that very little has been done to change the basic premise behind the statute in over 100 years.

In 1972, however, the Legislature enacted Article 27, section 36B, concerning the wearing, carrying, or transporting of a handgun. The statute's purpose is outlined as follows:

> (a) *Declaration of policy.*—The General Assembly of Maryland hereby finds and declares that:
>
> (1) There has, in recent years, been an alarming increase in the number of violent crimes perpetrated in Maryland, and a high percentage of those crimes involve the use of handguns;
>
> (2) The result has been a substantial increase in the number of persons killed or injured which is traceable, in large part, *to the carrying of handguns on the streets and public ways* by persons inclined to use them in criminal activity;
>
> (3) The laws currently in force have not been effective in curbing the more frequent use of handguns in perpetrating crime; and

(4) Further regulations on the wearing, carrying, and transporting of handguns are necessary to preserve the peace and tranquility of the State and to protect the rights and liberties of its citizens.

Maryland Code (1957, 1996 Repl.Vol., 2000 Cum.Supp.), Article 27, section 36B (emphasis added).[10]   Article 27, section 36B was designed to accomplish what the then current laws had been unable to accomplish—to crack down on the increased amount of violent crimes committed, primarily in public venues, with the use of handguns.   Recognizing this growing problem, the statute included language similar to then already enacted Article 27, section 36.   Section 36B also provides:

(b) Any person who shall wear, carry, or transport any handgun, whether concealed or open, upon or about his person, and any person who shall wear, carry or knowingly transport any handgun, whether concealed or open, in any vehicle traveling upon the public roads, highways, waterways, or airways or upon roads or parking lots generally used by the public in this State shall be guilty of a misdemeanor;   and it shall be a rebuttable presumption that the person is knowingly transporting the handgun....

Article 27, section 36B prohibits the wearing, carrying or transporting of handguns, whether concealed or open.   Although it was passed to address a more serious problem and although it demands a stricter standard than section 36, subsection (c)(4) of 36B nonetheless provides:

Nothing in this section shall prevent a person from wearing, carrying, or transporting a handgun within the confines of real estate owned or leased by him or upon which he resides or within the confines of a business establishment owned or leased by him.

Section 36B was an attempt by the Legislature to reduce the use of handguns primarily in the commission of street crimes of violence.   *See Dillon v. State,* 277 Md. 571, 584, 357 A.2d

**10.**  Any future references to section 36B are references to Maryland Code (1957, 1996 Repl.Vol., 2000 Cum.Supp.), Article 27, section 36B.

360, 368 (1976); *Wright v. State,* 24 Md.App. 309, 317, 330 A.2d 482, 487, *cert. denied,* 274 Md. 733 (1975). However, apparently, the Legislature did not want its toughened stance on handguns on the street and in public areas to inadvertently be applied to affect an individual's right to possess a legal handgun in the home. We interpret the Legislature's addition of this "private property exception" not as support for the State's position that the absence of such an exception in section 36 should be interpreted to mean that the Legislature intended no distinction for shotguns between private and public property under section 36. Rather, we interpret the "private property exception" to mean that the Legislature recognized that, generally, a person has a right to possess a legal firearm in the home.[11] With the enacting of 36B(c)(4), the Legislature, it appears to us, simply wanted to safeguard this general right, to possess weapons in one's home, even as to handguns. The Legislature wanted what was implied in the more lenient section 36 to be specifically expressed in the stricter section 36B. Under the State's position, it would be legal for a person to have a handgun concealed on his person while standing in the kitchen of his home, but illegal for him to have the kitchen knives in a closed drawer nearby. We cannot accept that the Legislature intended such an incongruous interpretation of these related statutes.

Our rationale is supported by our past recognition of the intertwined relationship between section 36 and section 36B. We noted in *Eldridge,* 329 Md. at 313, 619 A.2d at 534–35 (1993), that an evaluation of section 36B is instrumental in our understanding of section 36:

> Section 36B concerns handguns. Handguns were expressly excepted from the provisions of § 36 and § 36B was enacted to fill the void....
>
>     . . . .

---

**11.** We also note that Baltimore City Code (2000), Article 19, section 59–1, the current version of Article 19, section 97 of the Baltimore City Code, under which petitioner was charged with carrying a shotgun with a barrel over fourteen inches also includes an exception for possession within the home.

We think that § 36B, concerned with handguns, is, to all intents and purposes, the counterpart of § 36, concerned with deadly weapons generally, except handguns. The proscribed conduct in both § 36(a) and § 36B(b) is the same—the carrying of the designated weapon. In view of the similarity of the statutes and our holding in *Webb* [ *v. State*, 311 Md. 610, 536 A.2d 1161 (1988) ], we conclude that the unit of prosecution in § 36(a), as we have found it to be in § 36B(b), is one offense—the carrying of a deadly weapon, regardless of whether it is carried concealed or openly.

Section 36B is a counterpart to section 36, and serves almost as an extension of the same legislative policy. Both attempt to crack down on the problem of the use of deadly weapons in the commission of violent crimes. Section 36B sets a stricter standard on the use of handguns, yet expressly provides for a limited private property exception. It would be contrary to the legislative scheme of both statutes for us to now apply a stricter standard concerning rifles and shotguns in private residences under the less evolved and less strict section 36.[12]

---

12. In 1894, in an effort to prevent the use of this statute to promote injustice, the Legislature amended the original language of the statute to exclude those persons carrying a concealed weapon "as a reasonable precaution against apprehended danger." In the preamble to this amendment, the Legislature stated:

It is represented to this General Assembly that the existing law in reference to the offense of carrying concealed weapons does not make proper discrimination in favor of those who travel in dangerous localities, or from other imminent necessity, *or prudent precaution in the presence of threatened injury to their lives or persons, may reasonably arm themselves for self-protection;* and the law has been made an instrument of injustice to those not deserving of punishment.... [Emphasis added.]

This exception is currently embodied in Article 27, section 36(f), which provides in relevant part:

(f) *Exceptions.*—Nothing in this section shall be construed to prevent the carrying of any of the weapons mentioned in subsections (a) and (b) of this section by:

....

(4) *Any person who shall carry such weapon as a reasonable precaution against apprehended danger,* but the tribunal before which any case arising under the provisions of this section may be tried, shall have the right to judge of the reasonableness of the carrying of any

We also look to our prior analysis of the purpose of Maryland's concealed weapon's statutes. As we said in *Anderson:*

> Criminal statutes dealing with concealed weapons serve two related purposes. First, they seek to protect the public by deterring persons from concealing on or about their persons weapons of which the public would be unaware, thereby preventing injury or death to unsuspecting members of the public. Second, these statutes protect the wearers or carriers of weapons from themselves, by attempting to deter persons from having at hand weapons that could be used in the heat of passion.

*Anderson,* 328 Md. at 432, 614 A.2d at 965 (citations omitted). The act of placing a shotgun under a mattress within one's home is not the type of unrestrained exercise of rights that this statute is attempting to prevent.

Section 36 is attempting to prevent incidents on public streets and in publicly accessible areas. As the Court of Appeals of Oregon stated, in a factually similar case involving a person convicted of carrying a concealed weapon (switchblade knife) in his home:

> [T]he [S]tate's interpretation would restrict the manner in which one could carry a legal weapon from room to room within one's home and would inhibit an act that is so intrinsic to ownership and self-defense that it would unreasonably interfere with the exercise of one's constitutional right to *possess* the [deadly weapon].

*State v. Stevens,* 113 Or.App. 429, 432, 833 P.2d 318, 319 (1992).

We recognize that Article 27, section 36 was intended by the Legislature to apply, generally, to persons traveling or congregating on public streets or areas generally accessible to the public. It was not designed to apply to people on their private property or people who reside in, or are an invited guest on that property when the owner has knowledge of the

---

such weapon, and the proper occasion therefor, under the evidence in the case. [Emphasis added.]

weapon. To apply this statute to people concealing weapons on such private property who have a legitimate reason for being on that property could lead to absurd results.

In statutory construction, absurd results are to be avoided. In *D & Y, Inc. v. Winston*, 320 Md. 534, 538, 578 A.2d 1177, 1179 (1990), we stated that "construction of a statute which is unreasonable, illogical, unjust, or inconsistent with common sense should be avoided." *See also, e.g., Degren v. State*, 352 Md. 400, 418, 722 A.2d 887, 895 (1999) ("[W]e should construe the statute in a manner that results in an interpretation 'reasonable and consonant with logic and common sense.' " (quoting *Lewis v. State*, 348 Md. 648, 654, 705 A.2d 1128, 1131 (1998))); *Edgewater Liquors*, 349 Md. at 808, 709 A.2d at 1303 ("[W]e approach statutory construction from a common sense perspective."); *Lewis*, 348 Md. at 662, 705 A.2d at 1135 ("We shall not interpret a statute to produce unusual or extraordinary results, absent the clear legislative intent to enact such a provision."); *Blandon v. State*, 304 Md. 316, 319, 498 A.2d 1195, 1196 (1985) ("[R]ules of statutory construction require us to avoid construing a statute in a way which would lead to absurd results."); *Comptroller v. Fairchild Indus., Inc.*, 303 Md. 280, 284, 493 A.2d 341, 343 (1985) ("A statute should not be construed by forced or subtle interpretations...."). Under the State's theory, a resident or owner of premises would have to keep his knives, his handguns, his rifles, his shotguns, and every other type of weapon, or potential weapon, in the open; *i.e.*, standing in the corner, on the coffee table, on the counter, on top of the bed, in the center of the floor. To conceal a weapon by hiding it in order to reduce the likelihood that a child will discover it, and use it, would be a crime. That is absurd.

Moreover, the State's position that a weapon may not be concealed on private property, if it resulted in weapons being left unconcealed, *as it might*, would lead to violations of other statutes. Maryland Code (1957, 1996 Repl.Vol.), Article 27, section 36K, titled "Access to firearms by minors" provides in relevant part in subsection (b): "an individual may not store

or leave a loaded firearm in any location where the individual knew or should have known that an unsupervised minor would gain access to the firearm." Any person violating the provisions of this section is guilty of a misdemeanor and subject to a fine of not more that $1000. If we were to adopt the State's position that shotguns may not be concealed, i.e., that they must be in open view, every hunter in Maryland with small children would be forced to violate one statute or the other: Keep the shotgun on the counter in violation of section 36K, or hide it from the child, i.e., conceal it in violation of section 36.

We hold that, generally, a person in legal possession of a dangerous and deadly weapon may conceal or store it as long as they are on property, which they own, or are a legal resident of, or are an invited guest who has informed the owner or resident of the presence of the weapon. To hold otherwise would turn this statute on its ear. How could a person place knives into a kitchen drawer without concealing them and violating this statute upon closing the drawer? How could a responsible hunter place shotguns in a gun cabinet without concealing them and violating this statute? How could an owner, and invited guests, transport encased shotguns across the "back 40" to the duck hunting blinds along the edge of the marsh or the deer-stand along the edge of the woods? How could a homeowner keep weapons for his protection without having them readily and illegally accessible to children? Clearly it was not the intent of the Legislature to make it a misdemeanor to put away silverware or to store a legal firearm.

Petitioner was concealing a weapon within his home. We hold that section 36 does not prohibit the concealing of otherwise legal weapons in one's residence, or on one's property, or on the private property of others, if the owner of that property is made aware of the presence of the otherwise legal weapon. This holding applies to owners, residents, renters, and, as we have indicated, under certain circumstances and conditions, even invited guests.

## Conclusion

We hold that, generally, a person in possession of a legal dangerous and deadly weapon may conceal or store it so long as they are on property, which they own, are a legal resident of, or are present on as an invited guest if the owner has knowledge of the possession of the weapon. The evidence presented in the case *sub judice* is insufficient to establish "wearing and carrying" of a dangerous or deadly weapon in violation of Article 27, section 36, where the evidence presented proves merely that the police found a shotgun under a mattress in petitioner's room where he resided. Accordingly, we reverse the decision of the Court of Special Appeals and remand the case to that court with instructions to vacate the judgment of the Circuit Court for Baltimore City.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY; COSTS TO BE PAID BY RESPONDENT .**

Judges RAKER, HARRELL and RODOWSKY, JJ., concur in Part One of the Opinion and in the result.